IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ERIC GONZALEZ ORDONEZ, | ) | |
| | ) | |
| Petitioner, | ) | **PETITION FOR A WRIT OF** |
| | ) | **HABEAS CORPUS** |
| v. | ) | |
| | ) | 1:25-cv-662 (LMB/LRV) |
| PAUL PERRY, in his official capacity as | ) | |
| Superintendent of the Caroline Detention | ) | |
| Facility, et al., | ) | |
| | ) | |
| Respondents. | ) | |

ORDER

For the past 17 months, petitioner Eric Gonzalez Ordonez ("petitioner"), a citizen of

Guatemala, has been detained in immigration custody pursuant to 8 U.S.C. § 1226(c), which

governs the detention of noncitizens deemed ineligible for bond pending their removal

proceedings. On January 2, 2025, petitioner was granted deferral of removal under the

Convention Against Torture ("CAT") based on Immigration Judge ("IJ") Karen Donoso Stevens

finding that, if petitioner were returned to Guatemala, he "will more likely than not face torture

from gang members with the consent or acquiescence of a public official." [Dkt. No. 1-5] at 13.

On January 15, 2025, the Department of Homeland Security ("DHS") appealed IJ Stevens's

decision to the Board of Immigration Appeals ("BIA"), which appeal is still pending.

Throughout his detention, Ordonez has never received an individualized bond hearing because

respondents believe that noncitizens detained under 8 U.S.C. § 1226(c) are not entitled to a bond

hearing.

Ordonez seeks a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2241,

claiming that his detention "has become unconstitutionally prolonged in violation of his Due

Process rights," and that he is entitled to a bond hearing. [Dkt. No. 1] ¶ 2. The Petition is fully briefed and oral argument has been waived. For the reasons that follow, Ordonez's Petition will be granted in part and denied in part, and respondents will be ordered to promptly provide petitioner with an individualized bond hearing before an IJ at which the government will bear the burden of proving by clear and convincing evidence that Ordonez should not be released on bond because he poses a flight risk or danger to the community.

I.

The record reflects, and the parties do not dispute, that petitioner was born in Guatemala in 1997 and unlawfully entered the United States in 2023. As a consequence of his uncle's position in the Guatemalan Civil National Police, over several years petitioner and his family faced several attempts on their lives from the 18th Street gang in Guatemala. In late 2022, 18th Street gang members assaulted and attempted to kidnap petitioner. The men beat him so much that he could see his ankle bone coming out and he developed seizure-like symptoms. Soon after the assault, petitioner fled Guatemala to live with his brother and his family in Harrisonburg, Virigina, where he has found work as a painter and in a poultry plant.

On October 15, 2023, petitioner was arrested for misdemeanor sexual battery. According to the criminal complaint, petitioner attempted to lure a woman who was walking her dogs into the woods, and when she refused, he followed her to her car, reached inside her car's open window and grabbed her vagina and her left breast. Petitioner pled nolo contendere to the charge. On December 12, 2023, the judge found petitioner guilty and imposed a 12-month sentence, with ten months suspended, and one year of probation. On December 13, 2023, DHS served petitioner with a Notice to Appear, charging him as subject to removal for being an alien present without admission or parole under Section 212(a)(6)(A)(i) of the Immigration and

Nationality Act ("INA"), and took him into custody the next day pursuant to INA

§ 236(c)(1)(A), 8 U.S.C. § 1226(c)(1)(A) as a noncitizen who committed a crime of moral

turpitude. He has remained in custody since that arrest.

On March 14, 2024, IJ Stevens designated petitioner incompetent to stand trial without

counsel and appointed attorneys from the Amica Center for Immigrant Rights as his Qualified

Representative. After the appointment of counsel, petitioner and his legal team submitted a

Form I-589 Application for Asylum, Withholding of Removal, and CAT. At his Individual

Merits Hearing on September 5, 2024 and October 8, 2024, petitioner testified to his past trauma

and experiences in Guatemala. Three months later, on January 2, 2025, IJ Stevens denied

petitioner's applications for Asylum and Withholding of Removal but granted relief under the

CAT, finding that petitioner "sufficiently established that upon removal to Guatemala, he will

more likely than not face torture from gang members with the consent or acquiescence of a

public official." [Dkt. No. 1-5] at 2. DHS appealed IJ Stevens's order on January 15, 2025.

In his habeas petition, petitioner seeks a bond hearing before this Court, or in the

alternative before an IJ, at which the government would bear the burden of proving by clear and

convincing evidence that he poses a flight risk or danger to the community. [Dkt. No. 1] ¶ 3.

Petitioner also asks the Court to require that "the adjudicator consider Mr. Gonzalez Ordonez's

ability to pay bond and alternatives to detention in addition to, or in lieu of, monetary bond."

[Dkt. No. 10] at 9. Respondents oppose Ordonez's request for relief, claiming that he is being

properly detained as a criminal noncitizen pursuant to § 1226(c), which does not provide a right

to a bond hearing. At a minimum, respondents argue that any bond hearing should take place

before an IJ, not this Court, and that petitioner should bear the burden of proving by a

preponderance of the evidence that he does not pose a risk of flight or danger to the community.

3

II.

The parties agree that § 1226(c)(4) authorizes the release of noncitizens "only if the

Attorney General decides . . . that release of the [noncitizen] from custody is necessary to

provide protection to a witness . . . and the [noncitizen] satisfies the Attorney General that [he]

will not pose a danger to the safety of other persons or of property and is likely to appear for any

scheduled proceeding." This statutory provision does not resolve the core constitutional issue

raised by petitioner, which is that under the Fifth Amendment, no person shall "be deprived of

life, liberty, or property, without due process of law." U.S. CONST. amend. V.

"The fundamental requirement of due process is the opportunity to be heard at a

meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976)

(quotation omitted). This protection extends to "aliens, whether their presence here is lawful,

unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (internal

citations omitted). The Supreme Court has recognized that at some point continued immigration

detention becomes "unreasonable and no longer authorized by statute." Zadvydas, 533 U.S. at

699–700. The Court in Zadvydas concluded that detention longer than six months is

presumptively unreasonable for detainees held subject to 8 U.S.C. § 1231(a)(6) after a final

removal order has been issued. Id. at 701. In Demore v. Kim, the Court recognized that

detention under § 1226(c) usually "lasts roughly [between] a month and a half . . . and about five

months," and has "a definite termination point." 538 U.S. 510, 529–30 (2003). Accordingly,

this Court must now determine what sort of process is due to Ordonez, who has been detained far

longer than the durations deemed presumptively unreasonable in Zadvydas and Demore. See

Zinermon v. Burch, 494 U.S. 113, 127 (1990) ("Due process . . . is a flexible concept that varies

with the particular situation.").

4

To determine if such prolonged detention without a bond hearing violates due process, courts in this district[1] apply the five-factor balancing test from Portillo v. Hott, 322 F. Supp. 3d 698 (E.D. Va. 2018). The five factors are: "(1) the duration of detention, including the anticipated time to completion of the [noncitizen's] removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors that significantly extend the duration of detention; and (5) the likelihood that the government will secure a final removal order." Id. at 707.

The first factor, which is the most important,[2] clearly favors petitioner. Ordonez has been in immigration custody for 17 months, several times longer than the "more than six months" the Supreme Court found to be presumptively unreasonable in Zadvydas. 533 U.S. at 701. Accordingly, Ordonez's seventeen-month detention weighs heavily in his favor as a prolonged and substantial burden on his liberty interest. This finding is enhanced by the potential for significant additional proceedings, because the appeal of Ordonez's successful application for deferral of removal under the CAT is pending, and because the government may seek third-country deportation even if petitioner's deferral of removal to Guatemala is sustained.

The second factor also weighs in petitioner's favor. He was convicted of a misdemeanor and sentenced to a maximum term of 12 months' imprisonment with all but 60 days suspended.

---

[1] See, e.g., Abreu v. Crawford, No. 1:24-cv-01782, 2025 WL 51475 (E.D. Va. Jan. 8, 2025); Santos Garcia v. Garland, No. 1:21-cv-742, 2022 WL 989019 (E.D. Va. Mar. 31, 2022); Martinez v. Hott, 527 F. Supp. 3d 824 (E.D. Va. 2021); Deng v. Crawford, No. 2:20-cv-199, 2020 WL 6387326 (E.D. Va. Oct. 30, 2020); Songlin v. Crawford, No. 3:19-cv-895, 2020 WL 5240580 (E.D. Va. Sep. 2, 2020); Gutierrez v. Hott, 475 F. Supp. 3d 492 (E.D. Va. 2020).

[2] See Haughton v. Crawford No. 1:16-cv-634, 2016 WL 5899285, at *9 (E.D. Va., 2016).

Petitioner's period of civil immigration detention has already far exceeded his criminal detention.

The third and fourth factors are neutral as there is no evidence of dilatory tactics by any party or of legal errors that have extended the duration of petitioner's detention. Although petitioner alleges that "DHS is responsible for delaying proceedings and has stood in the way of a final outcome for Mr. Gonzalez Ordonez's proceedings," including by appealing IJ Stevens's decision to grant deferral of removal and by not releasing Ordonez pending appeal, DHS's appeal was filed promptly, and it is common for ICE to keep an individual in custody pending appeal during removal proceedings. See Misquitta v. Warden Pine Prairie ICE Processing Ctr., 353 F. Supp. 3d 518, 526–27 (W.D. La. 2018) ("Where removal proceedings are delayed solely by a party's good faith exercise of its procedural remedies—whether by the petitioner or the government—continued detention is unlikely to trigger due process concerns.").

The fifth factor weighs in favor of petitioner. As this Court has stated, one "can only speculate as to how the BIA will rule on the government's appeal, but, given the favorable disposition at the IJ level, petitioner has a much stronger argument that a final removal order is unlikely to be forthcoming than does the average alien detained under § 1226(c)." Haughton v. Crawford, No. 1:16-cv-634, 2016 WL 5899285, at *10 (E.D. Va. 2016).

Taken together, the Portillo factors support granting petitioner a bond hearing. The burden on the government to provide a bond hearing is minimal, and the government's interest in protecting against any flight risk or danger to the community can be fully served by addressing those very interests in a hearing.

Having determined that Ordonez receive an individualized bond hearing, the question remains as to what procedures apply at the hearing. As a threshold matter, it is standard

6

procedure in this district and around the country for immigration judges, not district court judges, to oversee immigration bond hearings. Petitioner's citations to out-of-circuit cases only show that a district court may conduct an immigration bond hearing, not that it must or should. Accordingly, petitioner's request for this Court to preside over the hearing will be denied.

The next issue is the burden of proof at the hearing. Ordonez contends that to justify his continued detention, the government should bear the burden of proving by clear and convincing evidence that he poses a flight risk or danger to the community. Respondents respond that the regulations governing bond hearings for detained noncitizens, 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8), apply and that the burden is on Ordonez to demonstrate to the satisfaction of the IJ that his release would not pose a danger to property or persons and that he is likely to appear for future proceedings. [Dkt. No. 16] at 27–29.

As this Court has repeatedly explained, in light of the ongoing infringement of petitioner's due process rights, "the balance between individual and government interests requires that the burden of justifying petitioner's continued detention falls upon the government. See Mathews, 424 U.S. at 334–35 (explaining that the dictates of due process depend on the private interests affected, the risk of erroneous deprivation of those interests, and the government's interests)." Haughton v. Crawford, 221 F. Supp. 3d 712, 714 (E.D. Va. 2016); see also Rodriguez v. Perry, 1:24-cv-651, [Dkt. No. 23] at 13–14 (E.D. Va. Sept. 3, 2024). Accordingly, to afford Ordonez the process he is due at the bond hearing, the government must demonstrate by clear and convincing evidence that Ordonez is either a flight risk or a danger to the community. If the government fails to meet this burden, Ordonez must be released on bond.

Petitioner's final request is that the Court order the IJ presiding over the bond hearing to consider Ordonez's ability to pay and alternatives to detention. As respondents point out, this

7

request is unnecessary because, under existing regulations, the IJ may consider all relevant information. See 8 C.F.R. § 1003.19(d) ("The determination of the [IJ] as to custody status or bond may be based upon any information that is available to the [IJ] or that is presented to him or her by the [noncitizen] or the Service."). Accordingly, this request will be denied.

III.

For all these reasons, Ordonez's Petition [Dkt. No. 1] is GRANTED IN PART and DENIED IN PART, and it is hereby

ORDERED that within 30 days of the date of this Order, respondents provide Ordonez with an individualized bond hearing before an immigration judge at which the government will bear the burden of proving by clear and convincing evidence that Ordonez should not be released on bond because he poses a flight risk or danger to the community.

The Clerk is directed to forward copies of this Order to counsel of record, to enter judgment in Ordonez's favor pursuant to Federal Rule of Civil Procedure 58, and to close this civil action.

Entered this 29 day of May, 2025.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

8